# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IMMERVISION, INC. | **)** | |
| | **)** | |
| *Plaintiff,* | **)** | |
| | **)** | CA No. 1:18-cv-01630-MN |
| v. | **)** | |
| | **)** | JURY TRIAL DEMANDED |
| LG ELECTRONICS U.S.A., INC. AND LG ELECTRONICS, INC. | **)** | |
| | **)** | |
| | **)** | |
| *Defendants.* | **)** | |
| _____ | **)** | |
| IMMERVISION, INC. | **)** | |
| | **)** | |
| *Plaintiff,* | **)** | |
| | **)** | CA No. 1:18-cv-01631-MN |
| v. | **)** | |
| | **)** | JURY TRIAL DEMANDED |
| LG ELECTRONICS U.S.A., INC. AND LG ELECTRONICS, INC. | **)** | |
| | **)** | |
| | **)** | |
| *Defendants.* | **)** | |
| _____ | **)** | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTIONS TO PARTIALLY EXCLUDE THE TESTIMONY OF DR. RUSSELL CHIPMAN
### (CIVIL ACTION NO. 1:18-CV-01630, D.I. 171, 172)
### (CIVIL ACTION NO. 1:18-CV-01631, D.I. 169, 170)

Dated: July 19, 2022

MORGAN, LEWIS & BOCKIUS LLP

John V. Gorman (#6599)
Amy M. Dudash (#5741)
Kelsey A. Bomar (#6641)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: (302) 574-3000
john.gorman@morganlewis.com
amy.dudash@morganlewis.com
kelsey.bomar@morganlewis.com

*Counsel for Defendants LG Electronics U.S.A., Inc. and LG Electronics, Inc.*

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     NATURE AND STAGE OF PROCEEDINGS .................................................. 1

III.    SUMMARY OF ARGUMENT ........................................................................... 2

IV.     STATEMENT OF FACTS .................................................................................. 4

   A.   Claim Construction ...................................................................................... 4

   B.   Dr. Chipman's Opinions ............................................................................. 6

      1.   The "optical means" term .................................................................... 6

      2.   The "panoramic objective lens" term .................................................. 9

V.      ARGUMENT ..................................................................................................... 10

   A.   Dr. Chipman's opinions do not conflict with the Court's claim construction rulings ... 10

      1.   Dr. Chipman does not limit the claim term "panoramic objective lens" to a 180 degree field of view ......................................................................... 10

      2.   Dr. Chipman's opinions on the "optical means" means-plus-function term are consistent with the construed corresponding structure ........................................ 12

   B.   Dr. Chipman's opinions on "optical means" properly consider structural components  17

   C.   Dr. Chipman's opinions are soundly based on the claim's requirement that a panoramic image be "obtained" ........................................................................................ 20

   D.   Dr. Chipman is entitled to opine on the IR filter and mask as elements related to performance of the claimed function ....................................................................... 22

VI.     CONCLUSION .................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  448 F.3d 1324 (Fed. Cir. 2006).................................................................................. 22
*Bancorp Servs., LLC v. Hartford Life Ins. Co.*,
  359 F.3d 1367 (Fed. Cir. 2004).................................................................................. 20
*Baran v. Med. Device Techs., Inc.*,
  666 F. Supp. 2d 776 (N.D. Ohio 2009)....................................................................... 19
*Caterpillar Inc. v. Deere & Co.*,
  224 F.3d 1374 (Fed. Cir. 2000)............................................................................. 20, 22
*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
  10 F.4th 1330 (Fed. Cir. 2021) .................................................................................. 12
*Koki Holdings Co., Ltd. v. Kyocera Senco Indus. Tools, Inc.*,
  Civ. Action No. 18-313-CFC, 2021 WL 4943621 (D. Del. Jan. 21, 2021) (Burke, J.)...... 18, 23
*Odetics, Inc. v. Storage Tech. Corp.*,
  185 F.3d 1259 (Fed. Cir. 1999).................................................................................. 17
*Solomon Techs., Inc. v. Int'l Trade Comm'n*,
  524 F.3d 1310 (Fed. Cir. 2008).................................................................................. 19
*Toro Co. v. Deere & Co.*,
  355 F.3d 1313 (Fed. Cir. 2004).................................................................................. 19
*Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd.*,
  896 F.3d 1357 (Fed. Cir. 2018).................................................................................. 12
*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F. 3d 1576 (Fed. Cir. 1996).................................................................................. 21

**Statutes**

35 U.S.C. § 112(a) (2018)............................................................................................ 12

## I.     INTRODUCTION

Defendants LG Electronics U.S.A., Inc. and LG Electronics, Inc. (collectively, the "LGE Defendants") respectfully request that the Court deny Plaintiff ImmerVision, Inc.'s ("ImmerVision") Motions to Partially Exclude the Testimony of Dr. Russell Chipman (collectively, the "Motion").[1]  Contrary to ImmerVision's arguments, Dr. Chipman's opinions are consistent with the Court's claim constructions and are well-supported by the law.  They should not be precluded.

## II.    NATURE AND STAGE OF PROCEEDINGS

On October 19, 2018, ImmerVision filed the 1630 and 1631 Actions against the LGE Defendants asserting infringement of U.S. Patent No. 6,844,990 (the "'990 patent"); those cases have been consolidated for all purposes.  *See* 1630 Action, D.I. 1 (Compl.), 23 (Scheduling Order); 1631 Action, D.I. 1 (Compl.), 23 (Scheduling Order).  The parties have completed fact and expert discovery.  A pretrial conference is scheduled for November 21, 2022, and trial is scheduled for November 28, 2022.  *See* D.I. 155-1 (Scheduling Order).

The instant Motion involves "infringement arguments only with respect to C.A. 18-cv-1630."[2]  D.I. 172 (ImmerVision's Brief in Support of the Motion; hereafter the "Brief" or "Br.") at 2-3 n.3.  In the 1630 Action, ImmerVision asserts infringement of apparatus claim 21 with respect to certain accused smartphones.  *See* 1630 Action, D.I. 83 (Second Am. Compl.) at ¶¶ 54-59.  In the 1631 Action, ImmerVision asserts infringement of method claim 5 with respect to different accused smartphones.  *See* 1631 Action, D.I. 83 (Second Am. Compl.) at ¶¶ 55-60.

---

[1] ImmerVision filed an identical version of the Motion and Supporting Brief in both the above-captioned actions, Civil Action Nos. 1:18-cv-01630 (the "1630 Action") and 1:18-cv-01631 (the "1631 Action"), at D.I. Nos. 171-172 and 169-170, respectively.

[2] Citations to docket entries will be made to the 1630 Action, unless otherwise noted.

Although the Motion does not seek to exclude any opinions of Dr. Chipman related to claim 5, the LGE Defendants will respond to the Motion with respect to both claims 5 and 21.

## III.    SUMMARY OF ARGUMENT

1.    Many of ImmerVision's arguments are based on the incorrect premise that the LGE Defendants are trying to contradict the Court's determination that the term "panoramic objective lens" is not limited to a field of view around 180 degrees. This is incorrect. The LGE Defendants appreciate that the Court did not read such a limitation into this term, and nowhere does Dr. Chipman opine otherwise. In contrast, Dr. Chipman's analysis applies a *different* claim term, "optical means for projecting a panorama into an image plane of the objective lens," which is a means-plus-function limitation *separately* construed by the Court according to a different legal standard. Consistent with the strict statutory standard for construing means-plus-function limitations, the Court construed this term with both a recited function and specific corresponding structure from the specification that the Court determined was linked to performing that function. In applying the construction to the accused products, Dr. Chipman properly compares the specific structure from the specification identified in the Court's construction—a series of optical elements having a 180-degree field of view—to the accused products.

Separately, recognizing that the Court construed the term "panoramic objective lens" to encompass fields of view less than 180 degrees, Dr. Chipman opines on whether the full scope of the claims is (a) enabled to a person of ordinary skill in the art and (b) adequately supported by the specification. These are independent statutory requirements of Section 112, and they need to be satisfied in view of the Court's construction. Dr. Chipman opines that these independent statutory requirements are not satisfied, including with respect to lenses having a field of view less than 180 degrees (as construed by the Court). Nothing about these opinions is inconsistent with the Court's construction.

2

2.      ImmerVision is incorrect to argue that Dr. Chipman's noninfringement and invalidity opinions improperly analyze the "optical means" structure.  To the contrary, Dr. Chipman analyzes and applies the corresponding structure set forth in the Court's construction— *i.e.*, "a series of optical elements, as disclosed in the specification at column 16, line 5 through column 18, line 15 and Figures 15 through 18, and equivalents thereof."  Indeed, Dr. Chipman's noninfringement and invalidity reports repeatedly quote from and apply these very passages identified by the Court, which disclose requisite structural properties of the disclosed "series of optical elements," including its "image point distribution function" and its component optical elements, *e.g.*, a diffractive lens L6.  Dr. Chipman's analysis compares the accused products to the corresponding structure disclosed in the portions of the specification identified by the Court's construction of the "optical means" term.  This is appropriate and should not be precluded.

3.      ImmerVision is also wrong in alleging that Dr. Chipman reads an "image sensor" into claim 21.  Dr. Chipman's analysis of the image sensor is relevant to his analysis of the claim terms "obtained" and "projecting."  Dr. Chipman explains that the "obtained" image is different from the "projected" image (different terms in the same claim are presumed to have different meanings), and that the "obtained" panoramic image is what is captured by the image sensor. Based on this analysis, Dr. Chipman opines that the image "obtained" by the accused products do not have the compression-expansion-compression characteristics required by claim 21 of the '990 patent, and therefore, do not infringe.  He does so without reading any limitation into the claims. This opinion is proper and should not be precluded.

4.      ImmerVision's argument that the accused products' IR filter and mask are "irrelevant" to infringement has no merit.  Dr. Chipman's noninfringement opinions include a comparison of the corresponding structure disclosed in the specification to perform the function

of the "optical means" term to the structure in the accused products, including the IR filter and

integrated mask, which perform that very function.  Dr. Chipman further explains that the IR filter

and mask are integral optical elements of the "optical means" in the accused products, that the

accused lenses are designed and optimized based on inclusion of the integrated IR filter and mask,

and that the IR filter and mask impact the image point distribution function of the accused lenses,

which is at the heart of the asserted claims of the '990 patent.  Such an analysis is not only proper

under means-plus-function law; it is necessary.  Dr. Chipman's opinions should not be precluded.

## IV.   STATEMENT OF FACTS

### A.   Claim Construction

Asserted claim 21 depends from claim 17.  These claims read as follows:

> 17.  A ***panoramic objective lens*** comprising:
>
> ***optical means for projecting a panorama into an image plane of the objective lens***, the optical means having an image point distribution function that is not linear relative to the field angle of object points of the panorama, the distribution function having a maximum divergence of at least ±10% compared to a linear distribution function, such that a panoramic image obtained by means of the objective lens comprises at least one substantially expanded zone and at least one substantially compressed zone.
>
> 21.  The ***panoramic objective lens*** according to claim 17, wherein the lens compresses the center of the image and the edges of the image, and expands an intermediate zone of the image located between the center and the edges of the image.

D.I. 172-1, Br. Ex. A ('990 patent) (emphasis added).  During claim construction, the Court

construed the two emphasized terms.  *See generally* Ex. 1 (D.I. 163) (Claim Construction Op.).

With respect to the "optical means" term, which the parties agreed is a mean-plus-function

term, Magistrate Judge Burke agreed with ImmerVision in some respects and agreed with the LGE

Defendants in others.  With respect to the *function* of the "optical means," the parties agreed that

"projecting a panorama into an image plane of the objective lens" is a function of the "optical

means." *See, e.g.,* Ex. 1 (D.I. 163) (Claim Construction Op.) at 5.  The LGE Defendants argued that the recited "image point distribution function" further defined the function of the "optical means."  *See* Ex. 2 (D.I. 115) (Joint Claim Construction Br.) at 59-60.  In contrast, ImmerVision argued that it defines "**further structural characteristics** of the optical means, not [] a further functionality."  *Id.* at 61 (emphasis in original).  ImmerVision further argued that the "distribution function" is a "characteristic or property of the lens ***defined by its structure***."  *Id.* (emphasis added).  Magistrate Judge Burke rejected the LGE Defendants' proposed construction and adopted ImmerVision's proposal, finding that "an image point distribution function" of the "optical means" is a characteristic or property of an image projected by the optical means, not its function.  *See* Ex. 3 (D.I. 149) (Claim Construction R. & R.) at 12-14.

With respect to the *structure* of the "optical means," the parties agreed that the structure disclosed in Figures 15, 16, and 18 and the corresponding description at column 16, line 5 through column 17, line 54 should be included.  *See id.* at 17.  This agreed portion of the specification discloses, among other things, a specific image point distribution function (*i.e.*, the function Fd1 in Figure 7B, "expanding the image in the center") and a specific field of view (*i.e.*, 180°) of the corresponding structure.  *See* D.I. 172-1, Br. Ex. A ('990 patent) at 16:5-10, 16:31-32.  Magistrate Judge Burke rejected ImmerVision's proposal to additionally include descriptions of generic structures or general description of the invention, *e.g.*, at column 4, lines 39-48; column 5, lines 56-57; and column 15, line 42 to column 16, line 4.  *See* Ex. 3 (D.I. 149) (Claim Construction R. & R.) at 15-17.  Magistrate Judge Burke found that such general descriptions did not amount to a description of structure that is clearly linked to the recited function.  *See id.* at 15-17.  On the other hand, Magistrate Judge Burke agreed with ImmerVision that Figure 17 "should be designated as ***part of the requisite structure***" because it is an enlarged version of lens L6 shown in Figures 15

and 16.  *Id.* at 17 (emphasis added).  Magistrate Judge Burke deemed Figure 17 to disclose "some additional detail about the specific lens that ***makes up a part of the corresponding structure***."  *Id.* at 17-18 (emphasis added).  The parties did not object to Magistrate Judge Burke's construction of the "optical means" term, and the Court so adopted it.  *See* Ex. 1 at 4.  The Court's construction reads:

> That term will be construed to be a means-plus-function term.  The function is "projecting a panorama into an image plane of the objective lens."  The corresponding structure is "a series of optical elements, as disclosed in the specification at column 16, line 5 through column 18, line 15 and Figures 15 through 18, and equivalents thereof."

*Id.*

For the other disputed claim construction term heard by Magistrate Judge Burke— "panoramic objective lens"—the parties' dispute concerned the breadth of the "field of view" of the claimed lens.  *See id.* at 5.  Magistrate Judge Burke recommended that the Court limit the field of view to "on the order of 180 degrees."  *See id.*  ImmerVision objected to that recommendation, and the Court sustained ImmerVision's objection to that construction, instead construing "panoramic objective lens" to mean "wide-angle objective lens."  *See id.*

### B.      **Dr. Chipman's Opinions**

The LGE Defendants served several technical expert reports consistent with these constructions, including Dr. Russell Chipman's rebuttal noninfringement report (D.I. 172-1, Br. Ex. D), opening invalidity report (D.I. 172-1, Br. Ex. B), and reply invalidity report (D.I. 172-1, Br. Ex. C).

#### 1.      **The "optical means" term**

ImmerVision's Motion relates to three aspects of Dr. Chipman's opinions regarding the "optical means" term.  First, Dr. Chipman analyzes the corresponding *structure* of the means-plus-function term.  As discussed above, the Court defined that structure as "a series of optical elements,

as disclosed in the specification at column 16, line 5 through column 18, line 15 and Figures 15 through 18, and equivalents thereof." Ex. 1 at 4. Consistent with that construction, in ascertaining the differences between the claimed structure corresponding to the "optical means" and the accused structure, Dr. Chipman quotes from, and analyzes, the specific portions of the '990 patent identified in the construction. *See, e.g.,* D.I. 172-1, Br. Ex. D (Chipman Noninfringement Report) at ¶¶ 87 (discussing the corresponding structure's image point distribution function "expanding the center of the image," disclosed at column 16, lines 5-10),[3] 89 (discussing the corresponding structure's 180° field of view, specified at column 16, lines 31-32), 93 (discussing a diffractive lens L6, part of the corresponding structure, shown in Figure 17 and discussed at column 17, lines 4-7), 104-111 (discussing differences between the corresponding structure disclosed in the specification and the accused structure).

Second, Dr. Chipman analyzes the *function* of the "optical means" term—*i.e.*, "projecting a panorama into an image plane of the objective lens." *See generally* Ex. 1 (D.I. 163) (Claim Construction Op.) at 4. In that analysis, Dr. Chipman identifies two components in the accused smartphones that drastically impact that function—an infrared ("IR") filter and a mask integrated in the IR filter, and he further assesses the degree of that impact. *See, e.g.,* 172-1, Br. Ex. D (Chipman Noninfringement Report) at ¶¶ 102 ("[A]ny projection of the alleged panorama 'into an image plane of the objective lens' must necessarily be by the IR filter in addition to the lens assembly, not by the lens assembly alone."), 103 ("[T]he IR filter [with a mask] is an integral part of the design of the accused lens and influences, among other things, the location of the image

---

[3] As discussed above, ImmerVision argued, and Magistrate Judge Burke agreed, that an image point distribution function of the "optical means" is a structural characteristic of the "optical means," not its function. *See* Ex. 2 (D.I. 115) (Joint Claim Construction Br.) at 61; Ex. 3 (D.I. 149) (Claim Construction R. & R.) at 12-14.

plane specified for the accused lens in the specifications for the accused camera modules.  As I also discuss above, the IR filter alters the light it receives from the lens assembly, and the altered light is projected into the image plane of the lens.").  In this discussion, Dr. Chipman points out that ImmerVision's infringement expert, Mr. David Aikens, "does not mention at all in his reports an IR filter … with a mask that is included in the accused camera module of each of the Accused Products."  *Id.* at ¶ 102.  Thus, according to Dr. Chipman, Mr. Aikens' opinions fail to establish infringement because he fails to take into account an "integral part of the design of the accused lens"—the IR filter with a mask.  *See id.*  Moreover, Dr. Chipman opines that his testing of the accused lenses with this integral part showed no infringement even under Mr. Aikens' flawed theory that the "obtained" image is the same as the "projected" image.  *See id*. at ¶¶ 158-160, 164.

Third, Dr. Chipman opines on the distinction drawn in the '990 patent between two limitations recited in independent claim 17:

a. "optical means for ***projecting*** a panorama into an image plane of the objective lens;" and

b. "a panoramic image ***obtained*** by means of the objective lens comprises at least one substantially expanded zone and at least one substantially compressed zone"

D.I. 172-1, Br. Ex. A ('990 patent) (emphasis added); *see, e.g.,* D.I. 172-1, Br. Ex. D (Chipman Noninfringement Report) at ¶¶ 136-137.  Dr. Chipman analyzes these limitations in assessing whether the image "obtained" by accused products infringes claim 21 (which depends from claim 17).  In doing so, Dr. Chipman explains that the "projected" image and "obtained" image are different, and determines that the patent is clear that the "obtained" image is what is captured by the image sensor.  *See, e.g.,* D.I. 172-1, Br. Ex. D at ¶¶ 135-143.  In his noninfringement report, Dr. Chipman ultimately concludes that none of the accused products are capable of capturing or

obtaining a panoramic image having the claimed characteristics recited in the asserted claims.  *Id.* at ¶¶ 144, 156-157.

*      *      *

As explained throughout Section V below, each of these aspects of Dr. Chipman's opinions is proper and should not be precluded.

2.      **The "panoramic objective lens" term**

In his invalidity reports, Dr. Chipman opines that claims 5 and 21 lack adequate written description and fails to satisfy the enablement requirement for several reasons, including for failing to provide requisite written description and enabling disclosure for the full scope of the "panoramic objective lens" as construed by the Court.  *See* D.I. 172-1, Br. Ex. B (Chipman Opening Invalidity Report) at ¶¶ 77-79; D.I. 172-1, Br. Ex. C (Chipman Reply Invalidity Report) at ¶¶ 83-84. Specifically, Dr. Chipman opines that the specification of the '990 patent discloses and enables (at most) only a lens with a 180 degrees field of view, but the specification does not provide written description support or an enabling disclosure for the full scope of "panoramic objective lens" recited in claims 5 and 21 as construed by the Court (*i.e.*, the specification does not provide written description support or an enabling disclosure for lenses with significantly less than 180 degrees field of view).  *See* D.I. 172-1, Br. Ex. B at ¶¶ 77-79; D.I. 172-1, Br. Ex. C at ¶¶ 83-84.  Dr. Chipman also opines that the patent lacks adequate written description and enabling disclosure for other limitations recited in claims 5 and 21.  *See generally* D.I. 172-1, Br. Ex. B at ¶¶ 50-76; D.I. 172-1, Br. Ex. C at ¶¶ 25-82.  Thus, in Dr. Chipman's opinion, the failure to provide adequate written description and enabling disclosure for the full scope of the "panoramic objective lens" contributes to claims 5 and 21 not being enabled and lacking adequate written description in the specification.  *See* D.I. 172-1, Br. Ex. B at ¶¶ 77-79; D.I. 172-1, Br. Ex. C at ¶¶ 83-84.

*      *      *

9

As discussed in Section V.A.1 below, Dr. Chipman's opinions do not read any limitations into claims 5 or 21, nor do they apply "panoramic objective lens" to be limited to 180 degrees field of view in contravention of the Court's Claim Construction Order.

## V.     ARGUMENT

### A.     Dr. Chipman's opinions do not conflict with the Court's claim construction rulings

#### 1.     Dr. Chipman does not limit the claim term "panoramic objective lens" to a 180 degree field of view

In Section IV.A.1 of its Brief, ImmerVision seeks to preclude two distinct opinions on the purported grounds that they are inconsistent with the Court's construction of "panoramic objective lens": (1) Dr. Chipman's noninfringement opinions at paragraphs 89, 107, 110, and 117 of the noninfringement report (D.I. 172-1, Br. Ex. D); and (2) Dr. Chipman's written description and enablement opinions at paragraphs 77-79 of the opening invalidity report (D.I. 172-1, Br. Ex. B) and paragraphs 83-84 of the reply invalidity report (D.I. 172-1, Br. Ex. C). There is no basis to preclude any of these opinions.

As a preliminary matter, these opinions are directed to different claim terms: (1) the noninfringement opinions are directed to the "optical means" means-plus-function term (*see* D.I. 172-1, Br. Ex. D at ¶¶ 89, 107, 110, 117); and (2) the invalidity opinions are directed to the "panoramic objective lens" term (*see* D.I. 172-1, Br. Ex. B at ¶¶ 77-79; D.I. 172-1, Br. Ex. C at ¶¶ 83-84). ImmerVision articulates no reasonable basis for precluding Dr. Chipman's noninfringement opinions directed to the "optical means" term based on the Court's construction of the "panoramic objective lens" term. ImmerVision mischaracterizes Dr. Chipman's testimony regarding the "optical means" term as being somehow inconsistent with the Court's construction of the separate "panoramic objective lens" term. This is not true. The "optical means" term was construed differently and according to a different statutory standard. *See* Ex. 1 (D.I. 163) (Claim

Construction Op.) at 5. Thus, ImmerVision effectively submits no basis to challenge these portions of Dr. Chipman's noninfringement opinions, nor can it, for the following reasons.

As discussed in further detail in Section V.A.2 below, Dr. Chipman properly applies the Court's construction of the "optical means" term—***not*** the "panoramic objective lens" term—by applying the specific portions of the specification recited in the means-plus-function construction, which recite, *inter alia*, that the "divergent optical group L1, L2, L3 defines the field angle of the objective lens 30, here of 180°." D.I. 172-1, Br. Ex. A ('990 patent) at 16:31-32. This disclosure specifies that the corresponding structure (*i.e.*, the objective lens 30 shown in Figures 15 and 16) identified by the Court has a field angle of 180°. *See* D.I. 172-1, Br. Ex. D at ¶¶ 89, 107, 110. Dr. Chipman compares the structure in the accused products to the structure identified in the Court's construction. *See generally id.* at ¶¶ 101-113. This is entirely consistent with (and mandated by) the Court's construction, and therefore, should not be precluded.

As for the challenged invalidity opinions, those focus on whether the "panoramic objective lens" term, as construed, complies with the requirements of Section 112. *See* D.I. 172-1, Br. Ex. B (Chipman Opening Invalidity Report) at ¶¶ 77-79; D.I. 172-1, Br. Ex. C (Chipman Reply Invalidity Report) at ¶¶ 83-84. Nothing about these opinions is improper or inconsistent with the Court's construction of "panoramic objective lens." Dr. Chipman assumes that the claimed "panoramic objective lens" in claims 5 and 21 is not limited to lenses with smaller fields of view than a 180° field of view, consistent with the Court's construction. He then opines that the specification does not enable a person of ordinary skill in the art to practice the full scope of the claim as construed by the Court, nor does the specification provide adequate written description to support this breadth of claim scope. *See* D.I. 172-1, Br. Ex. B at ¶¶ 77-79; D.I. 172-1, Br. Ex. C at ¶¶ 83-84. Dr. Chipman conducts a proper written description and enablement analysis under

these Section 112 requirements, which must be independently satisfied for claims 5 and 21 as construed by the Court.  *See* 35 U.S.C. § 112(a) (2018) ("The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same."); *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1337 (Fed. Cir. 2021) ("[T]he written description must lead a person of ordinary skill in the art to understand that the inventors possessed the ***entire scope of the claimed invention***.") (citing cases) (emphasis added); *Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd.*, 896 F.3d 1357, 1364 (Fed. Cir. 2018) ("Our precedents make clear that the specification must enable the ***full scope of the claimed invention***.") (citing cases) (emphasis added).

Contrary to ImmerVision's argument, Dr. Chipman does not read a 180° field of view limitation into the "panoramic objective lens" term in claim 21, but rather, opines just the opposite—that the "panoramic objective lens" term does *not* include this limitation.  Dr. Chipman then analyzes the requirements of Section 112—issues not addressed by this Court's claim construction ruling—which must be satisfied by the claims, as construed.  ImmerVision's attempt to confuse these issues should be rejected, and Dr. Chipman's opinions should not be precluded.

### 2. Dr. Chipman's opinions on the "optical means" means-plus-function term are consistent with the construed corresponding structure

In response to Section IV.A.2 of ImmerVision's Brief, the LGE Defendants agree that Magistrate Judge Burke rejected certain aspects of LGE Defendants' proposed construction of the "optical means" term,[4] that the parties did not object to the construction, and that the Court adopted

---

[4] On the other hand, Magistrate Judge Burke agreed with the LGE Defendants in rejecting ImmerVision's proposed inclusion in the corresponding structure of the "optical means" descriptions of generic structures or general description of the invention, *e.g.*, at column 4, lines

Magistrate Judge Burke's recommendation.  However, while Magistrate Judge Burke rejected the LGE Defendants' proposed inclusion of the recited "image point distribution function" as part of the *function* of the "optical means," he did not exclude the image point distribution function specified at column 16, lines 5-10 from the corresponding *structure* of the "optical means."[5]  To the contrary, as ImmerVision admits, Magistrate "Judge Burke found that [the] associated structure [of the 'optical means' term] encompasses ***all the text*** from column 16, line 5 through column 18, line 15."  D.I. 172 (Br.) at 10 (emphasis added).

The dispute here concerns application of that specific structure—*i.e.*, Dr. Chipman's application of the specific portions of the specification recited in the Court's construction to the overall accused structure.  In this regard, Dr. Chipman ultimately concludes that (1) the differences between the corresponding structure disclosed in the specification and the accused structure "are highly significant and not insubstantial," and (2) the accused structure "projects an alleged panorama onto its image plane in a substantially different way and produces a substantially different result from" the corresponding structure disclosed in the specification.  D.I. 172-1, Br. Ex. D at ¶¶ 113, 118.

ImmerVision seeks to preclude the opinions in paragraphs 87, 89, 106, and 117 of Dr. Chipman's noninfringement report (D.I. 172-1, Br. Ex. D).  But in those paragraphs, Dr. Chipman quotes from, and applies, column 16 at lines 5-10 and lines 31-32—passages that fall squarely

---

39-48; column 5, lines 56-57; and column 15, line 42 to column 16, line 4.  *See* Ex. 3 (D.I. 149) (Claim Construction R. & R.) 15-17.

[5] Indeed, ImmerVision argued that the "distribution function" is a "characteristic or property of the lens ***defined by its structure***."  Ex. 2 (D.I. 115) (Joint Claim Construction Br.) at 61 (emphasis added).  In adopting ImmerVision's proposal, Magistrate Judge Burke determined that "an image point distribution function" of the "optical means" is a characteristic or property of an image projected by the optical means, not its function.  *See* Ex. 3 (D.I. 149) (Claim Construction R. & R.) at 12-14.

within the Court's construction.  *See* D.I. 172-1, Br. Ex. D at ¶¶ 87, 89, 106, 117.  For example, in paragraph 106, Dr. Chipman applies the passages quoted in paragraphs 87 and 89 to the accused lenses:

> In contrast [to the disclosure at column 16 lines 5-10], each of the accused lenses of the Accused Products II has a distribution function that is substantially different and is in fact exactly the **opposite**, *i.e.*, it **compresses** the resulting image in the center.  *See, e.g.*, the image point plots provided below; Aikens Report II, pp. 25-29.  These stark differences between each of the accused lenses and the objective lens 30 (and the objective lens 40) corresponding to the "optical means" limitation do not just relate to an insignificant aspect of the claimed invention of claim 21.  Other than the "optical means" limitation, the remaining limitations recited in claims 17 and 21 are **all** directed to the "image point distribution function" of the "optical means."  Thus, the differences in the image point distribution functions relate to the key feature of the claimed purported invention.  Based on these substantial differences alone, none of the accused lenses in the Accused Products II is equivalent to the objective lens 30 (or the objective lens 40),[6] has the "corresponding structure" of the "optical means" limitation, or satisfy the "optical means" limitation.

*Id.* at ¶ 106 (emphasis in original).

Dr. Chipman's opinions here are not "inconsistent with the Court's construction of the 'optical means' term."  D.I. 172 (Br.) at 11.  Rather, Dr. Chipman applies the specific structure in the Court's construction, as is required to properly apply the means-plus-function construction of the "optical means" term to the accused products.  It is ImmerVision that seeks to avoid application of the specific structure in the Court's construction by reading out the portion of the Court's construction that identifies the specific structure of the "optical means"—"a series of optical elements, *as disclosed in the specification at column 16, line 5 through column 18, line 15 and Figures 15 through 18*, and equivalents thereof."  Ex. 1 at 4 (emphasis added).

---

[6] The figures and associated descriptions for both objective lens 30 and objective lens 40 fall within the portions of the patent that constitute the associated structure of the "optical means" term—*i.e.*, column 16, line 5 through column 18, line 15; and Figures 15 through 18.  *See* D.I. 172-1, Br. Ex. A ('990 patent).

ImmerVision further takes issue with Dr. Chipman's assessment of the "image point distribution function" as part of his analysis of the means-plus-function term.  *See* D.I. 172 (Br.) at 9.  But a specific "image point distribution function" expanding the image in the center is disclosed within the passages that the Court defined as the *structure* of the "optical means"—at column 16, lines 5-10.  *See* D.I. 172-1, Br. Ex. A ('990 patent).  ImmerVision stated in claim construction that the image point distribution function is a "characteristic or property of the lens *defined by its structure*."  Ex. 2 (D.I. 115) (Joint Claim Construction Br.) at 61 (emphasis added).  Thus, the disclosed image point distribution function is part of the requisite structure of the "optical means," as construed by the Court.  Indeed, this is precisely what Dr. Chipman relies on in applying the structure.  *See, e.g.,* D.I. 172-1, Br. Ex. D at ¶ 110 (citing column 16, lines 5-10 of the '990 patent).  Thus, Dr. Chipman's opinions are entirely consistent with the Court's constructions and should not be precluded.

ImmerVision also relies on the inclusion of column 17, lines 55-60 of the specification in the corresponding structure of the "optical means" to seek preclusion of Dr. Chipman's opinion that the objective lens 30 of Figures 15 and 16 (*i.e.*, the corresponding structure) has the image point distribution function disclosed in column 16, lines 5-10.  *See* D.I. 172 (Br.) at 10-11.  ImmerVision's argument is without merit.  Column 17, lines 55-60 of the '990 patent states:

> One alternative of this embodiment involves providing several distorting mirrors so as to combine distortions or simplify complex distortions by characterising a type of distortion per mirror, which has the advantage of facilitating the engineering work.

D.I. 172-1, Br. Ex. A ('990 patent).  Magistrate Judge Burke determined that this section describes an alternative to "the embodiment of a non-linear objective lens 40 that is depicted in Figure 18" and that it accomplishes the same function as the lens 40.  *See* Ex. 3 (D.I. 149) (Claim Construction R. & R.) at 17.  First, as Dr. Chipman opines, ImmerVision's expert Mr. Aikens applies the

15

objective lens 30 as described in Figure 16 and its equivalents, ***not*** the objective lens 40 or its equivalents, as the corresponding structure of the "optical means" in his infringement analysis. *See* D.I. 172-1, Br. Ex. D at ¶ 99.  This is because, as Dr. Chipman also opines without a dispute from Mr. Aikens, the use of mirrors (which the above alternative also uses) makes the objective lens 40 neither the same nor equivalent to the accused structures.  *See id*. at ¶¶ 97-98.  Dr. Chipman opines that the image point distribution function of the objective lens 30 in Figures 15 and 16 disclosed in column 16, lines 5-10 is part of the corresponding *structure* of the "optical means." *See id*. at ¶ 87.  Second, even if the objective lens 40 or its alternative were somehow considered relevant corresponding structure for the infringement analysis, despite no such opinion from Mr. Aikens and despite incorporating mirrors, Dr. Chipman opines that the objective lens 40 is disclosed at column 17, lines 46-54, to have the equivalent distribution function as the objective lens 30.  *See id*. at ¶ 96.

Dr. Chipman's other references to "image point distribution function" are also not objectionable because they refer to other aspects of the claim language, specifically the clause reciting "the optical means having an image point distribution function."   In his noninfringement report, Dr. Chipman notes that "[o]ther than the 'optical means' limitation, the remaining limitations recited in claims 17 and 21 are ***all*** directed to the 'image point distribution function' of the 'optical means.'"  D.I. 172-1, Br. Ex. D at ¶ 106 (emphasis in original).  This, according to Dr. Chipman, indicates that the image point distribution function is a "key feature" of the claimed invention and that there are substantial differences between the image point distribution function of the corresponding structure of the "optical means" disclosed in the specification and that in the accused lenses.  *See id.*  Dr. Chipman concludes that these substantial differences relating to the "key feature" of the claimed invention take the accused structure outside the scope of infringement

(including equivalents).  *Id*.

Accordingly, Dr. Chipman's opinions rely on the portions of the specification identified by the Court's means-plus-function construction of the "optical means" and are consistent with the Court's construction.  Thus, his opinions should not be precluded.

### B.   Dr. Chipman's opinions on "optical means" properly consider structural components

In Section IV.B of its Brief, ImmerVision asks the Court to preclude Dr. Chipman's testimony analyzing the "series of optical elements" disclosed in the specification.  *See* D.I. 172 (Br.) at 11-12 (citing D.I. 172-1, Br. Ex. D at ¶¶ 109-112, 116).  ImmerVision's argument is without merit.  The Court construed the "optical means" term to be defined by the "series of optical elements" disclosed in the specification.  *See* Ex. 1 (D.I. 163) (Claim Construction Op.) at 5. Indeed, in the section of Dr. Chipman's noninfringement report with which ImmerVision takes issue, Dr. Chipman unambiguously relies on this aspect of the Court's construction.  *See, e.g.,* D.I. 172-1, Br. Ex. D at ¶ 108 ("I understand that the Court defined the 'corresponding structure' to be 'a series of optical elements,' not necessarily just lenses, as described in the above-identified portion of the specification and their equivalents.").

ImmerVision's argument is premised on several conclusory citations to *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259 (Fed. Cir. 1999).  ImmerVision relies primarily on the following proposition:

> ***The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations.***  Rather, the claim limitation is ***the overall structure*** corresponding to the claimed function.  This is why structures with different numbers of parts may still be equivalent under § 112, P 6, thereby meeting the claim limitation.

D.I. 172 (Br.) at 11 (emphasis in original) (quoting *Odetics*, 185 F.3d at 1268).  This proposition is inapposite here.  As discussed above, the Court expressly construed the "optical means" term to

*include* individual components disclosed in the specification—*i.e.*, "a series of optical elements." Magistrate Judge Burke's discussion in his Report and Recommendation of lens L6 shown in Figure 17—an individual component—clearly illustrates this point.  Magistrate Judge Burke explained that Figure 17 "should be designated as ***part of the requisite structure***" because it is an enlarged version of lens L6 shown in Figures 15 and 16.  Ex. 3 (D.I. 149) (Claim Construction R. & R.) at 17 (emphasis added).  He deemed Figure 17 to disclose "some additional detail about the specific lens that ***makes up a part of the corresponding structure***."[7]  *Id.* at 17-18 (emphasis added).  The Court adopted this construction including the details of component lens L6 shown in Figure 17 as part of the requisite structure for the "optical means."

In his analysis of the other optical elements in the "series of optical elements," Dr. Chipman repeatedly cites to and relies on the very portion of the specification identified by the Court's construction.  *See* D.I. 172-1, Br. Ex. D at ¶¶ 88-94 (discussing component lenses L1 through L7 of the objective lens 30 as disclosed in Figures 15-17 and column 16, line 11 to column 17, line 34), ¶¶ 96-98 (discussing component optical elements, including lenses L1-L3 and mirrors M1 and M2 in the objective lens 40 as disclosed in Figure 18 and column 17, lines 35-54).  Dr. Chipman is obligated to analyze what the construction's "optical elements" are, and how they compare to the optical elements in the accused smartphones, which is exactly what he does in his noninfringement report.  *See Koki Holdings Co., Ltd. v. Kyocera Senco Indus. Tools, Inc.*, Civ. Action No. 18-313-CFC, 2021 WL 4943621, at *1 (D. Del. Jan. 21, 2021) (Burke, J.) ("Mr.

---

[7] ImmerVision proposed, and the LGE Defendants disputed, including Figure 17 as part of the corresponding structure.  *See* Ex. 3 (D.I. 149) (Claim Construction R. & R.) at 9-10, 17.  Magistrate Judge Burke agreed with ImmerVision to include Figure 17 as part of the corresponding structure. *See id.* at 17-18.  ImmerVision cannot now backtrack from its own proposal adopted by the Court to include the additional detail about an individual component lens L6 disclosed in Figure 17 as a part of the corresponding structure.

Miller's discussion of additional components was in the context of his identification of the relevant structure in the accused device that performs the claimed function. His point was that the relevant structure identified by Koki's expert did not and could not perform the claimed function without additional elements. … Accordingly, after reconsideration, I find that the challenged opinions of Mr. Miller were not contrary to law and therefore are admissible.").

Moreover, the *Odetics* progeny clarifies that, in an infringement analysis, it is proper for the fact finder to consider individual structural components, where they are "central" to the overall structure. *See Solomon Techs., Inc. v. Int'l Trade Comm'n*, 524 F.3d 1310, 1317 (Fed. Cir. 2008) ("[O]ur case law allows for greater weight to be given to individual components that play a central role in the identified structure."); *see also Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1324 (Fed. Cir. 2004) ("To the extent the district court gave the [component] greater weight in considering [the limitation's] structure as a whole, this was appropriate given the [component's] central role."). Here, because the structural components of the "optical means" are included in the Court's construction, they are "central" to the term's overall structure. *See Baran v. Med. Device Techs., Inc.*, 666 F. Supp. 2d 776, 818-819 (N.D. Ohio 2009) ("While the Court is cognizant of the need to avoid a component-by-component analysis, MDTech correctly notes that it is not improper to give special attention to a particularly important component of the relevant corresponding structures. The Court finds that the cantilever/latching protrusion in the BioPince and release lever in the claimed invention are such structures with respect to the releasing function. These structures play an essential role in releasing the charge in the BioPince and the claimed invention.") (citing *Solomon Techs.*, 524 F.3d at 1317). To the extent there is any disagreement on this point, such disagreement would go to the weight rather than the admissibility of the testimony and should be evaluated by the jury as a factual question. *See Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374,

19

1379 (Fed. Cir. 2000) (infringement of a means-plus-function limitation is a question of fact for the jury).

C.    **Dr. Chipman's opinions are soundly based on the claim's requirement that a panoramic image be "obtained"**

In Section IV.C of its Brief, ImmerVision devotes less than two pages to its request to preclude over 30 pages of Dr. Chipman's opinions, mischaracterizing them as, "Testifying that Claim 21 Requires an Image Sensor."  D.I. 172 (Br.) at 12-13 (citing D.I. 172-1, Br. Ex. D. at ¶¶ 123-157).  ***Dr. Chipman does not opine that claim 21 requires an "image sensor."***  Rather, within the 30 pages that ImmerVision cites (and fails to address in any detail), Dr. Chipman analyzes the following claim language:

  a.   "optical means for ***projecting*** a panorama into an image plane of the objective lens;" and

  b.   "a panoramic image ***obtained*** by means of the objective lens comprises at least one substantially expanded zone and at least one substantially compressed zone"

D.I. 172-1, Br. Ex. A ('990 patent) (emphasis added).  In his noninfringement report, Dr. Chipman explains in detail, within the context of the '990 patent, how a panoramic image is "obtained." *See*, *e.g.*, D.I. 172-1, Br. Ex. D. at ¶¶ 124, 135-143.  Dr. Chipman first explains that "projecting" a panoramic image and "obtaining" a panoramic image are different. *See*, *e.g.*, *id*. at ¶¶ 136-137. Indeed, the two claim terms are presumed to have different meaning.  *See, e.g., Bancorp Servs., LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373-74 (Fed. Cir. 2004) (Using two terms "in close proximity in the same claim gives rise to an inference that a different meaning should be assigned to each.").  For example, the following figure shows these two terms being used in two different functional steps at two different points in time:



D.I. 172-1, Br. Ex. D at ¶ 136 (figure from Dr. Chipman's Noninfringement Report) (red annotations added).

Dr. Chipman determines that the panoramic image "obtained" is the panoramic image that is captured by the image sensor. *See, e.g.,* D.I. 172-1, Br. Ex. D at ¶ 135. He then concludes that "none of [the accused products are] capable of capturing on its image sensor" a panoramic image having the required property of compression-expansion-compression. *Id.* at ¶¶ 144, 149-150, 153. This entire analysis is focused on the "obtained" image, which as Dr. Chipman opines, is different than the image that is "projected." *See*, *e.g.*, *id.* at ¶¶ 136-137. But ImmerVision alleges: "Dr. Chipman opines that the Accused Products do not infringe claim 21 because the image '***captured***, *e.g.*, by the image sensor' does not include the full 'image disk *projected*' by the lens." D.I. 172 (Br.) at 12-13 (emphasis added). This is inaccurate. As discussed above, Dr. Chipman never equates a "captured" image with a "projected image." His opinions are quite different—*i.e.*, that the terms "obtained" and "projecting" have different meanings in the '990 patent. Contrary to ImmerVision's argument, this analysis does not "vary or contradict the claim language." D.I. 172 (Br.) at 13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F. 3d 1576, 1584 (Fed. Cir. 1996)). Rather, Dr. Chipman appropriately applies the plain and ordinary meaning of the term "obtained" (which the Court did not construe) in concluding that the accused products do not infringe. These opinions, therefore, should not be precluded.

D.    **Dr. Chipman is entitled to opine on the IR filter and mask as elements related to performance of the claimed function**

In Section IV.D of its Brief, ImmerVision seeks to preclude Dr. Chipman from testifying about the IR filter and the mask integrated in the IR filter, which are components in the accused smartphones.  *See* D.I. 172 (Br.) at 14-15.  However, in doing so, ImmerVision fails to even mention that this portion of Dr. Chipman's analysis focuses on these components being an integral part of the accused lenses that allegedly perform the Court's construed ***function*** of the "optical means"—"projecting a panorama into an image plane of the objective lens."  *See id.*; D.I. 172-1, Br. Ex. D (Chipman Noninfringement Report) at ¶¶ 102-103, 110 n.29.  Dr. Chipman also opines that the presence of the IR filter with a mask in the relevant structure of the accused devices is a substantial difference from the corresponding structure of the "optical means" disclosed in the specification, *i.e.*, the objective lens 30 in Figures 15 and 16.  *See* D.I. 172-1, Br. Ex. D (Chipman Noninfringement Report) at ¶¶ 108, 110.  Dr. Chipman's analysis is precisely what mean-plus-function law requires, and therefore, should not be precluded.  *See, e.g., Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006) ("Literal infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification.") (citation omitted).

The fact-intensive means-plus-function application is performed by assessing whether the structure in an accused device and the structure in the construction "perform the identical function in substantially the same way, with substantially the same result."  *Id.*; *see also Caterpillar*, 224 F.3d at 1379 (infringement of a means-plus-function limitation is a question of fact for the jury).  Dr. Chipman does just that.  He opines that the IR filter with a mask is an integral part of the

accused structure that allegedly performs the recited function of "projecting a panorama into an image plane of the objective lens":

> [T]he IR filter [with a mask] is an integral part of the design of the accused lens and influences, among other things, the location of the image plane specified for the accused lens in the specifications for the accused camera modules. As I also discuss above, the IR filter alters the light it receives from the lens assembly, and the altered light is projected into the image plane of the lens.

D.I. 172-1, Br. Ex. D (Chipman Noninfringement Report) at ¶¶ 103, 100 n.29. Dr. Chipman points out that ImmerVision's infringement expert, Mr. David Aikens, "does not mention at all in his reports an IR filter … with a mask that is included in the accused camera module of each of the Accused Products." *Id.* at ¶ 102. According to Dr. Chipman, Mr. Aikens' opinions fail to establish infringement because they fail to take into account the "integral part of the design of the accused lens" that is the IR filter with a mask. *Id.*

This analysis is highly relevant to comparing (a) the structure of the claimed "optical means" that performs the recited function, and (b) the structure in the accused products that performs that function. These opinions should not be precluded. *See, e.g., Koki Holdings*, 2021 WL 4943621, at *1 ("Mr. Miller's discussion of additional components was in the context of his identification of the relevant structure in the accused device that performs the claimed function. His point was that the relevant structure identified by Koki's expert did not and could not perform the claimed function without additional elements. … Accordingly, after reconsideration, I find that the challenged opinions of Mr. Miller were not contrary to law and therefore are admissible.").

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny ImmerVision's Motions to Partially Exclude the Testimony of Dr. Russell Chipman.

Dated: July 19, 2022

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ John V. Gorman*

John V. Gorman (#6599)
Amy M. Dudash (#5741)
Kelsey A. Bomar (#6641)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: (302) 574-3000
john.gorman@morganlewis.com
amy.dudash@morganlewis.com
kelsey.bomar@morganlewis.com

Collin W. Park (Admitted *pro hac vice*)
Calvin M. Brien (Admitted *pro hac vice*)
1111 Pennsylvania Ave.  NW
Washington, DC 20004
Telephone: (202) 739-3000
collin.park@morganlewis.com
calvin.brien@morganlewis.com

Andrew V. Devkar (Admitted *pro hac vice*)
2049 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 907-1000
andrew.devkar@morganlewis.com

*Counsel for Defendants LG Electronics*
*U.S.A., Inc. and LG Electronics, Inc.*